```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF MISSISSIPPI
                   JACKSON DIVISION
```

HENRY J. MCCRORY                                    PLAINTIFF

VS.                          CIVIL ACTION NO. 3:05CV218TSL-JCS

RYOBI TECHNOLOGIES, INC.                            DEFENDANT

                    MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Ryobi Technologies, Inc. (Ryobi) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Henry J. McCrory has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion is well taken and should be granted.[1]

Plaintiff filed this product liability suit seeking to recover damages for injuries he sustained while using a Ryobi Model TS-1340 miter saw. Plaintiff alleges that as he was reaching around the saw with his left arm to push a board he had just cut, the saw unexpectedly started by itself, i.e., without his having depressed the trigger, caught his shirt and pulled his

---

[1] There is also pending a related motion by plaintiff to strike a number of exhibits submitted by defendant in support of its summary judgment motion, which will be denied for the reasons set forth in defendant's response to that motion. In addition, defendant has moved to strike an affidavit of plaintiff's expert submitted by plaintiff as an addendum to his response to defendant's motion for summary judgment. That motion is addressed herein, infra.

arm into the blade. Plaintiff has identified alleged defects in the manufacture of the saw which he contends caused the saw to energize on its own. Solely for purposes of its motion, Ryobi assumes that the subject saw had a manufacturing defect or defects, which existed at the time the saw left Ryobi's custody and control, and that such defects rendered the saw unreasonably dangerous.[2] It concedes, as well, that plaintiff was injured. Ryobi submits, however, that plaintiff's claims must still fail because he cannot prove the essential element of causation. <u>See</u> Miss. Code Ann. § 11-1-63(a)(ii) and (iii).

The first person to examine the saw following plaintiff's accident was George Whelchel, an in-house product and safety expert employed by Ryobi who met with plaintiff and his wife at their home on April 29, 2004 to examine the saw. When Whelchel first plugged in the saw and pulled the trigger, the saw would not start. Whelchel opened the trigger-handle housing, which contains a micro-switch that is controlled by the trigger and three wires that attach to the switch: a yellow wire that attaches to the "common" (COM) terminal; a black wire that attaches to the "normally open" (NO) terminal; and a brown wire that attaches to the "normally closed" (NC) terminal. Upon examination, Whelchel noticed that the yellow wire was not connected to the COM

---

[2] Thus, plaintiff's arguments that there are genuine issues of material fact as to these issues are misplaced.

terminal, as it should have been. Before doing anything else, Whelchel took two photographs of the switch and wiring, and with plaintiff's permission, he connected the yellow wire to the switch and reassembled the housing. When he then plugged in the saw, it worked properly. Whelchel took the housing back apart, detached the yellow wire from the COM terminal and put the housing back together, leaving it as he had found it.

Shortly after Whelchel examined the saw, plaintiff took the saw to a local company, May & Company, to get an opinion as to what caused the accident. A representative of May & Co. called plaintiff about two weeks later to let him know they had "fixed" the saw. When plaintiff responded that he had not wanted the saw "fixed," the representative said he would "unfix" the saw, which he apparently did by detaching the yellow wire.

After retrieving the saw from May & Co., plaintiff hired an attorney, who in turn hired an expert, Cedric Walker, to examine the saw and provide an opinion as to how the accident had occurred. Walker inspected the saw first in November 2004, and made a more detailed evaluation in December 2004, following which he furnished his report.

As Walker explained in his report, and subsequently in his deposition testimony, the yellow wire contained within the saw's trigger-handle housing is energized whenever the saw is plugged into a wall outlet; the black wire which runs parallel to the

yellow wire provides a path for current to flow through the motor. In normal operation of the saw, squeezing the trigger makes the switch connect the black and yellow wires, providing power to the motor that spins the blade. However, if the yellow and black wires were to be connected by some other means, the motor would also spin.

Upon examining the saw, Walker concluded that the saw had two manufacturing defects which worked together to cause the yellow and black wires to come in contact and to cause the subject accident. Specifically, he opined that (1) the yellow wire in the trigger-handle housing, which should have been tightly secured to the terminal, was "loosely connected" upon manufacture, and (2) the plastic insulating sleeve covering the wires in the housing should have completely covered the metal ends of the terminals (to within at least 1/8 inch of the terminal end) but did not and as a result, the metal conductive end of the terminal was exposed. Walker concluded that the accident occurred because the yellow wire came loose from the switch and migrated a fraction of an inch until the exposed metal terminal of the yellow wire contacted the black wire and energized the motor. As support for his position, Walker noted there were arc marks present on the yellow and black wires and on the NO terminal. According to Walker, "[t]he arc damage proves that the yellow and black wires came to contact each other within the switch housing."

It is undisputed that if the yellow wire was energized and came in contact with the black wire, this would have created arc marks on the yellow and black wires. It is also undisputed that at the time Walker inspected the saw, first in November 2004 and again in December 2004, there were arc marks present on the yellow wire, the black wire and the switch on the NO male terminal, as evidenced by photographs taken by Walker at the time of his December 2004 examination. Thus, at some point, an energized yellow wire did come in contact with the black wire. However, whereas plaintiff submits that this occurred at the time of the accident, defendant maintains in its motion that all the available evidence indicates that the arc marks (and thus the required contact between the yellow and black wires) did not occur at the time of the accident but some time thereafter, such as perhaps when the saw was in the hands of May & Co. Indeed, in the face of substantial evidence from Ryobi that the arc marks upon which Walker's opinion is premised were not present at the time of the accident, plaintiff has failed to come forward with evidence creating a triable issue on this point. Summary judgment is therefore in order.

Whelchel, the first person to examine the saw following the accident, has testified affirmatively that he examined the wires and switch for the presence of arc marks and that the arc marks later identified by Walker simply were not present at the time he,

Welchtel, examined the saw on April 29, 2004.  Plaintiff argues that notwithstanding Whelchel's testimony, a jury could conclude that the arc marks were present and that Whelchel's examination was deficient, i.e., in that he either did not look for arc marks or that he missed the presence of arc marks.  However, photographs taken by Whelchel at the time of his examination in April 2004 confirm his testimony that arc marks were not present and thus belie any reasonable conclusion that the arc marks were created at the time of plaintiff's accident.

The two photographs in question, Exhibits I and J to Ryobi's motion, do not show the yellow wire inside the trigger-handle housing, and thus do not themselves definitively prove that there was no arc mark present on the yellow wire at that time.  However, Walker has opined that all of the arc marks were created at the same time, and whereas the photographs do not show the yellow wires, they do show the black wire, and although plaintiff contends otherwise, the photographs clearly show that the arc mark found by Walker was not present on the black wire at the time of Whelchel's examination.

With reference to the photographs, plaintiff complained in response to defendant's motion that prior to filing its summary judgment motion, Ryobi had not produced the actual prints of the Whelchel photographs but had only provided photocopies of Exhibits I and J for examination by plaintiff's expert.  Upon being shown

photocopies of the photographs during his deposition, Walker maintained that the copies were not clear enough for him to state whether or not arc marks were present on the portion of the black wire shown in the photographs.  Thus, plaintiff argued in response to defendant's motion that the court should deny summary judgment, and give plaintiff the opportunity to have his expert examine the actual prints of the two photographs and to depose the defendant regarding the whereabouts of the photographs since the start of the litigation.  Subsequently, plaintiff supplemented his response with an affidavit from Walker regarding the photographs; that affidavit is now the subject of a motion to strike by Ryobi.[3]  In his affidavit, Walker declares:

> Based on the raster staircasing visible on the yellow trigger portion of the enlarged version of the low-resolution photographs, I calculate that the raster line separation is .024 inch, yielding an overall resolution of only 416 x 332 pixels for these 10 x 8 images. Furthermore, the rectangular artifact around the speckles on the prints show that they have undergone lossy compression prior to printing.  This type of compression blurs and smears small details, and the

---

[3] Ryobi has explained that prior to Walker's deposition, it was not able to find the original disk on which the photographs were saved and thus only color copies of the photographs could be produced to plaintiff, which were, in fact, produced early on in discovery.  After Walker claimed in his deposition that the copies were not sufficiently clear for him to determine whether they showed the absence of arc marks, Ryobi re-doubled its efforts to find the disk containing the original photographs and notified plaintiff prior to the discovery deadline that it had been found. Particularly since Walker has now been able to view the photographs, the court perceives no prejudice to plaintiff nor basis for withholding summary judgment pending a deposition of defendant regarding its late production of the photographs.

> image of an arc mark is the sort of detail that could be
> obliterated by this type of compression.  In particular,
> this type of compression obscures details by separating
> them in a rectangular box, several of which are seen
> surrounding the dirt specs, on the blue plastic housing
> of the handle depicted in the prints.  At this
> magnification level, the rectangular artifact is of
> about the same width as the female terminal.

Walker further asserts in his affidavit that "the orientation of the yellow wire and the black male terminal in these prints is such that it is impossible to see the yellow female and black male arc marks that I photographed during my examination in December 2004."  He thus concludes that the Whelchel photographs "are of no value in showing the arc marks found and photographed by me in December 2004."

Defendant has moved to strike Walker's affidavit not only because Walker has not been designated as an expert in any area pertaining to the electronic storage process of digital photographic prints, the development process of photographic prints, the determination of the resolution of photographic prints or any other area related to photography, but also because Walker, in fact, has no expertise in any of the referenced areas. Defendant further contends that even if the affidavit is not stricken, it does not contradict the defendant's affirmative proof which establishes that the accident did not happen the way plaintiff claims it did.

The court's careful review of the record fully supports defendant's position.  It bears repeating that Walker himself

8

testified that all of the arc marks that he found in his examinations of the saw in November and December 2004 were created at the same time. Thus, if the record proof establishes that any of the marks were not present at the time of Whelchel's examination in April 2004, then according to Walker's testimony, it would follow that none of the arc marks were present in April 2004. Walker does state in his affidavit that the orientation of the Whelchel photographs is such that "it is impossible to see the yellow female and black male arc marks that I photographed during my examination in December 2004." However, defendant has never contended that the Whelchel photographs depicted the absence of arc marks on the yellow female or black <u>male</u> terminals. Rather, it has contended that whereas Walker's December 2004 shows a severe and very noticeable arc mark on the black <u>female</u> terminal, the Whelchel photographs clearly depict the absence of any arc mark on the black <u>female</u> terminal. Thus, Walker's assertion regarding the orientation or perspective of the Whelchel photograph may be true, but it misses the point.

Finally, whereas Walker contends that the manner in which the Whelchel photographs were taken, developed and/or enlarged distorted the image and resulted in the "blurring" and "smearing" of "small details," the fact is, Walker has not been designated as an expert in these areas, he does not profess expertise in these areas and his record does not support a finding of expertise in

9

these subject areas.  Accordingly, he is not qualified to state his proffered opinion as to the effect of the development/ enlargement process on the quality of the images depicted in defendant's exhibits I and J.  Defendant's objection to his opinion in this regard is therefore well taken.  Yet even if Walker could fairly offer an opinion on this issue, the fact is, he has not opined that the Whelchel photograph has smeared, blurred or obliterated an arc mark that was present on the black female terminal, but only that it "could" have done so.  Clearly, however, it did not.

  The arc mark on the black female terminal reflected in the December 2004 photograph taken by Walker is not a mere blemish or discoloration, but rather a large circular area of erosion; a relatively large area of the end of the terminal is missing altogether.  The April 2004 Whelchel photograph shows a rectangular terminal end that is not eroded in the least but instead is fully intact.  The terminal edges in the Whelchel photograph may not be as clearly defined as they would be were the resolution of the photograph higher, but they are clear nonetheless. As defendant notes, it does not take an expert in photography to look at these photographs and see that the end of the terminal has not be "blurred" or "smeared"; rather, the arc mark later found by Walker is simply not present at all in the Whelchel photographs.

In sum, there is no evidence in the record from which a jury could reasonably find that the arc marks found by Walker were created at the time of the accident. The evidence, in fact, is to the contrary: it shows plainly that the arc marks were not created at the time of the accident, and thus that plaintiff's theory of the accident is incorrect and that the alleged manufacturing defects claimed by plaintiff did not cause the accident.

Accordingly, it is ordered that defendant's motion for summary judgment is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 13th day of April, 2007.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE